## D. W. NORRIS

*v.*

## NELSON ROGERS.

*Filed at Ottawa June 16, 1883.*

PARTNERSHIP—*contract construed as to rights of parties on dissolution.* A and B entered into a co-partnership, the former to furnish $1000, and the latter, as his capital, his patent for the manufacture and sale of "incased glass vessels," the articles of co-partnership providing that the profits of the business, and the proceeds arising from either the sale or leasing of any territory, should be equally divided between them, either one of the partners having the right to sell or lease, and that the partnership might be dissolved by either, on giving notice thereof, at any time. The contract also provided that a division of the assets should be had in case of a dissolution "without a sale of the business," in which event each partner was to take back what he put into the business. Prior to the dissolution of the firm and notice thereof, B, the patentee, granted to C the *exclusive* right to manufacture and sell wares under the patent, and all re-issues of the same, for the entire term it might run, reserving a .certain royalty or license fee on all wares manufactured and sold by C: *Held,* that as the transfer of the exclusive right under the patent to C was the same as a sale, and was made prior to the dissolution, A was entitled to one-half of the royalty or license fees thereafter to be paid by C to B, and that if it was a mere leasing to C the same result would follow.

APPEAL from the Appellate Court for the Second District; —heard in that court on writ of error to the Circuit Court of Kane county; the Hon. CHARLES KELLUM, Judge, presiding.

Mr. L. HILL, and Mr. ADLAI T. EWING, for the appellant.

Mr. FRANK CROSBY, and Mr. J. W. RANSTEAD, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Complainant, Nelson Rogers, by his bill represents that on the 13th day of October, 1877, a co-partnership was formed between himself and defendant, D. W. Norris, for the purpose of manufacturing and selling "incased glass vessels," covered by letters patent issued to defendant, and selling territorial rights under such letters, and for doing such other acts as might be necessary for the successful prosecution of such business, to which partnership complainant was to, and did, furnish as his share of the capital, $1000, and defendant furnished as his share of the capital, the use of the letters patent so issued to him.    The partnership contract was reduced to writing, and signed by the respective parties. Afterwards, on the 6th day of June, 1879, explanatory or supplementary articles of co-partnership were entered into, and signed by the partners.    The agreement, and the partnership formed by it, were to continue so long as the same should be mutually desirable.    Some business was done by the firm, but the extent and kind is not set forth in the bill.    Barring the single transaction out of which this litigation springs, in regard to the business transacted by the firm there is now no contention between the partners.    During the existence of the firm, a one-fourth interest in the patent was sold to Mr. Burgess, and afterwards, on the 23d day of June, 1879, Norris and Burgess, jointly, sold to the firm of Riessner & Co., the exclusive right to manufacture and sell wares under the letters patent, and the re-issues thereof, named and provided for in the original and supplementary agreements, in consideration of which grant Riessner & Co. agreed to pay Norris, or his legal representatives, certain licenses,

fees, or royalties, upon all "incased glass vessels" manufactured and sold by them under the patent. The assignees, or grantees, or licensees, whatever they may be called, of the patent, were to make reports of the goods manufactured by them under the letters patent, at the end of every quarter, on and after the 1st day of September, 1879, and to make payment for vessels manufactured in any month on the first day of the next succeeding month. Under this contract the grantees or licensees began to manufacture and sell the particular wares covered by the patent, and paid Norris the royalties for vessels manufactured in August and September, 1879, one-fourth of which Norris says he received for and paid to Burgess, and the other three-fourths he received for the use of the firm of Norris & Rogers, up to the date of its dissolution. Under the articles of co-partnership, Norris claimed the right to and did give notice of the dissolution of the firm, to take place on the 11th day of September, 1879, and thereafter denied the right of complainant to participate in or receive any portion of the royalties to become due from Riessner & Co., under the contract of June 23, 1879. Thereupon complainant filed this bill to obtain an accounting of the royalties received by Norris from Riessner & Co. under his contract with them, and to determine his interest in that contract, and for a decree that three-eighths of all future royalties to accrue thereunder shall be paid directly to him. On the hearing of the cause the court adjusted the equities between the partners, and decreed that complainant, under the partnership agreement, was entitled to an interest equal to three-eighths of the whole amount of royalties to accrue under the contract with Riessner & Co. That decree was affirmed, on defendant's appeal, in the Appellate Court, and defendant brings the case to this court on his further appeal.

It will be seen, on examination, that by the express terms of the original contract either party to it could terminate the partnership whenever he chose to do so. Accordingly defend-

ant elected to declare a dissolution of the firm on the 11th day of September, 1879, and gave notice to that effect. The only question for decision is, what is the interest of each partner in the contract with Riessner & Co. since the dissolution of the firm. There is now no other matter in dispute. Of course the rights of the partners depend on the construction that shall be given to the original and supplementary agreements. The profits of the business, by the provisions of the second paragraph of the original agreement, were to be equally divided between the partners. The fifth paragraph of the contract declares the proceeds of any territory under the patent that may be either sold or leased by the firm, shall be divided in the same manner as gains from the business of the firm,—that is, equally. It will be observed these provisions of the original contract are in no manner changed by anything contained in the supplementary contract. The meaning of the second and fifth paragraphs would seem to be so obvious as to require no construction. Indeed, no construction could make their meaning clearer. The profits arising from the business, and the proceeds realized from the sale or leasing of any territory under the patent, were all to be divided equally between the partners. That was the understanding the parties themselves had of the contract, for when a fourth interest in the patent was sold by the firm to Burgess, the proceeds were equally divided, as other gains from the business were divided. In this respect there is no ambiguity in the agreement. Whatever difficulty there is in the case arises on the seventh paragraph of the original, and the third and fourth paragraphs of the supplementary, contracts, which were obviously intended to fix the rights of the partners in case of a dissolution of the firm. These several paragraphs must be read together, to ascertain their meaning. By the seventh paragraph of the original contract provision is made for a division of the assets of the firm, in case a dissolution "takes place, without a sale of the business." In

that event the capital in the business was to be divided, and each part assigned to the partner by whom it was furnished. That would give back to complainant, in case of a dissolution, his money advanced to the firm, and in case no sale had been made defendant would receive back his patent. It is quite evident the supplementary agreement was entered into with a view to obviate all difficulties that might arise on a dissolution of the firm after a sale of the patent, or any interest in it, or of a leasing of a part or of the whole of it, otherwise there was no necessity for the latter paragraph it contains. It will be observed the third clause of the supplementary agreement is mainly explanatory of the seventh clause of the original contract. Most important is the provision as to the terms on which defendant shall have the privilege of taking back any interest in the patent that may remain at the dissolution of the firm. But that clause can have no application to the case as now presented. It will be noted nothing remained of the patent at the dissolution of the co-partnership on the 11th of September, 1879. Prior to that date defendant had granted to Riessner & Co. the *exclusive* right to manufacture and sell wares under the patent, and all re-issues of the same, for the entire period the same might run. That was equivalent to a sale or an assignment of the patent itself. Had defendant conveyed his interest in the patent by deed, in the usual form, to Riessner & Co., it would not have more effectually deprived him of the use of it. Thereafter the right of the grantees was exclusive to the use of the patent, and a deed from the patentee would not have conveyed any greater interest. It must, therefore, follow, that on a dissolution of the co-partnership the interests of the partners must be adjusted as in case there had been a sale by the firm of the remaining interest in the patent, and that could be done no otherwise than under the fourth clause of the supplementary agreement. That clause, it will be observed, forbids defendant to declare a dissolution of the

co-partnership pending negotiations for the sale of any interest in the patent. It is immaterial by whom or which partner the sale or negotiations might be effected. The only limitation was, the sale should be subject to the approval of defendant. It was agreed, "if negotiations be completed with any other party, whereby any fixed and definite amount of money or other property shall become due said firm, as royalties or otherwise, at any fixed and definite future time, nothing herein contained shall be construed as in any way depriving said Rogers of his full share, as herein provided for, of such amount." Negotiations had been, shortly prior to notice of the dissolution of the firm, concluded with Riessner & Co. to sell to them the exclusive right to manufacture and sell wares under the patent so long as it, or any re-issues of it, should run, for certain royalties, to be paid at a "fixed and definite future time." Treating the sale of the exclusive right to manufacture and sell wares under the patent for the entire period it had to run as tantamount to a sale of the patent itself, that which was done comes within the agreement of the parties, and must be controlled by it. But if it was no more than a leasing of the patent for the period it had to run, that also comes within the provisions of the fifth clause of the original contract, and the proceeds to be derived therefrom should be divided equally. Whether the contract with Riessner & Co. be called a sale or a leasing of the patent, in either event the right of the patentee to its further use was parted with forever. It was either a sale or leasing of the patent, and no reason is perceived why complainant is not entitled to share in the royalties to be received from the grantee or lessee of the patent. That is the plain meaning of the agreement of the parties, and as the decree of the circuit court does nothing more than give complainant the benefit of his contract with defendant, the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*